UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
FELICIA BRAY,                           :        11 Civ. 7884 (DLC)
                    Plaintiff,          :
                                        :        OPINION & ORDER
         -v-                            :
                                        :
NEW YORK CITY DEPARTMENT OF EDUCATION,  :
                                        :
                    Defendant.          :
                                        :
--------------------------------------- X


For the plaintiff:
Elliot B. Pasik
Law Office of Gerald P. Gross
366 Pearsall Avenue, Suite 5
Cedarhurst, NY 11516

For the defendant:
Daniel Chui
Assistant Corporation Counsel of the City of New York
100 Church Street, Room 2-115
New York, NY 10007

DENISE COTE, District Judge:

    Felicia Bray ("Bray") filed this action on November 4,

2011, alleging that the City of New York Department of Education

("DOE") subjected her to a hostile work environment and

retaliated against her for complaining about that discriminatory

conduct in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"), New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. § 290 et seq., and the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

1

§ 8-101 <u>et seq</u>.  After a ten year career as a school aide and teacher, Bray worked as an Assistant Principal for one and a half years.  In this action she asserts that her complaints against the school principal for his sexually harassing conduct led to the loss of her appointment as an Assistant Principal and required her to return to working as a teacher.  Following the completion of discovery, the defendant moved for summary judgment.  For the reasons that follow, the defendant's motion for summary judgment is granted in part.

BACKGROUND

     Unless otherwise noted, the following facts are undisputed, or taken in the light most favorable to the plaintiff.  Bray was hired by the DOE in September 1998.  Ten years later, in September 2008, she began work at the Manhattan Center for Science and Math High School (the "School") as an interim-acting Assistant Principal ("AP") of Operations.  Her duties included managing school funds and budgets, and supervising teachers and the secretarial staff.  Under the DOE's policies, Bray's position could be terminated at any time.

     During her time at the School, Bray's supervisor was Principal Jose David Jimenez ("Jimenez").  Bray asserts that

over the course of the year that followed, Jimenez sexually assaulted and harassed her in the six incidents described below.

The first instance of sexual harassment occurred on October 15. Bray and Jimenez were at the School after normal school hours to attend a School Leadership Team Meeting. After the meeting, Jimenez and Bray walked to a restaurant near the School. At the restaurant, Jimenez touched Bray's hand and told her he really liked her. Bray responded that she felt uncomfortable and wanted to leave. When they returned to the School's parking lot, Jimenez asked Bray to reenter the School. Bray followed Jimenez to his office, where Jimenez grabbed her breasts from behind for two to five minutes. Bray screamed so loudly that a School custodian came to the office door. She hid inside Jimenez's bathroom while Jimenez spoke to the custodian.

Less than a week later, on October 20, Bray participated in a process known as "C-30." Jimenez and a review panel interviewed her for the position of probationary AP. Jimenez told Bray of her appointment as a probationary AP the next day. As a probationary AP, Bray received union representation and the protection of additional DOE protocols before she could be fired.

A second incident occurred on November 26. Bray was driving out of the School's parking lot when Jimenez drove up

3

beside her, began honking his horn, and yelling for her to follow him "right now." Bray ignored him and drove away.

The next incident took place in the spring of 2009. Bray was in her office with a colleague Dan Albetta ("Albetta") when she received a call from Jimenez requesting that she meet him in the health office. When Bray and Albetta arrived at the health office, Jimenez asked Bray to open a desk drawer. The drawer contained a dildo, and Jimenez asked Bray if the dildo was supposed to be in the office and began laughing. Bray responded that the item was frequently used in sex education classes.

Next, Jimenez invited Bray and Assistant Principal Arleen Milton ("Milton") to attend a formal networking event in Queens on May 8. Jimenez had asked if he could accompany Bray to her house so that they could drive to the event together and Bray had refused. At the close of the event, as Bray was entering an elevator, a belligerent Jimenez began screaming at her and demanding that she go home with him.

Around the same time, Jimenez also asked Bray to attend the Senior Prom with him in May. When she declined, Jimenez reassigned Bray from AP of Operations to AP of Physical Education, a position for which she was purportedly not qualified. When the plaintiff declined to attend the Senior Prom with Jimenez, Milton attended the Prom with Jimenez

4

instead.  The plaintiff claims that following the Prom, Milton,
with whom she had previously had a positive relationship, began
to harass and or retaliate against her by, for instance,
agreeing to take over Bray's AP of Operations position when Bray
was reassigned to be AP of Physical Education.

On June 18, the Coordinator of Student Activities, Margaret
Warner ("Warner"), told Jimenez that Bray had delayed depositing
School funds in a bank.  Warner told Jimenez that there was
$37,391 (the "Cash") in the School safe.  The Cash had been
collected as early as May 9 by the School's senior class to pay
for activities related to graduation and for the class yearbook,
but Bray had not yet deposited the Cash in a bank account.  Bray
explained to Jimenez and Warner that she had not had time to
drive to the bank.  Jimenez instructed her to deposit the funds
in a bank promptly.  Despite this incident, on July 1, 2009,
Bray received a "Satisfactory" rating for her work during the
period of September 2008 through June 2009.

Sometime in July of 2009, Jimenez asked Bray to bring a
binder with financial documents to his office.  Jimenez met Bray
in the hallway, "leaned in" toward her, "sniffed" her neck and
laughed.

In July of 2009, Bray began to complain about Jimenez's
sexual harassment.  In addition to informing her Union

representative Juanita Bass ("Bass"), and the Deputy Director for Human Resources with the DOE Judith Rivera ("Rivera"), Bray reported Jimenez's sexual advances to investigator Michael Humphreys of the Special Commissioner's Office of Investigation.

In September 2009, Bray filed a complaint with DOE's Office of Equal Opportunity ("OEO") alleging that Jimenez had sexually harassed her.[1]  On September 4, OEO sent an email to Jimenez notifying him that the OEO was in receipt of Bray's sexual harassment complaint against him.  The plaintiff claims that this notice precipitated retaliation against her by Jimenez,

---

[1] It is unclear from the record whether Bray complained of all or only some of the incidents described above in her complaints to the OEO, the Special Commissioner's Office of Investigation, Bass, and Rivera.  The complaints filed with the OEO and the Special Commissioner's Office are not in the record.  There is, however, a letter dated July 15, 2009, addressed to "Whom it May Concern," in which Bray claims that Jimenez sexually harassed, assaulted, and verbally abused her.  The parties do not explain to whom this letter was sent.  It appears from the statements in the letter that Bray may have attached photocopies of entries from her journal to the letter.  The defendant has submitted dozens of Bray's journal entries that were written during the time of Bray's employment at the School.  In her journal entries, Bray described most, if not all of the incidents mentioned above, including the sexual assault on October 15.  In addition, Bray has attached a series of emails between herself and Rivera, and Bass.  In an email of July 22, 2009 to Rivera, Bray writes that she "wanted to tell [Rivera] the latest," and continues to describe the July incident in which Jimenez "leaned in" toward her in the hallway, and made "a sniffing sound."

Milton, and Mayo Pepein, the AP of Technology.  Milton had moved into the office Bray had when Bray was AP of Operations.  Milton began sending emails to Bray seeking information needed for the position and pointing out errors Bray had made.  Bray felt this conduct was retaliatory.

On September 3, 2009, the day before Jimenez received notice of the plaintiff's OEO complaint, Jimenez met with Bray and Bass her union representative, to discuss the Cash that Bray had failed to deposit.  Afterwards, Jimenez sent Bray a memorandum describing the meeting, noting that Bray had violated a Chancellor's Regulation, which required her to deposit money promptly, and warning Bray that she might receive an unsatisfactory rating for the school year and be fired.

On September 6, Bray met with Superintendent Pena to discuss Jimenez's harassment.  A month later, on October 5, Jimenez met with Bray and Bass to review allegations against Bray of professional misconduct and insubordination.  That same day, Jimenez placed a letter in Bray's file indicating that Bray had disrupted an administrative meeting on September 24 in Jimenez's office.  Sometime in October, in an effort to avoid receiving an unsatisfactory rating, Bray applied to enter a supervisory support program.  In December, however, Jimenez refused to allow Bray to participate in the program.

7

On October 13, Bray served a notice of claim on the DOE, alleging claims against the DOE for negligent hiring and creation of a hostile work environment.  The notice of claim provides the following description of the "time when, the place where and the manner in which the claim arose:"

> On or about July 15, 2009 . . . Jose David Jimenez, sexually assaulted Claimant by inappropriately touching, getting to [sic] close, and sniffing Claimant.  Respondents' employees were negligent in failing to supervise their employee, Mr. Jimenez. . . .

On December 1, Jimenez placed a second letter in Bray's file indicating that Bray had failed to provide updated balance sheets for School accounts, to secure School funds, and to monitor health compliance mandates for students' tuberculosis vaccinations.

On December 11, Jimenez filed a Pedagogical Supervisory Personnel Report in which he recommended a "discontinuance" of Bray's "Probationary service," which translated into Bray being removed from her position as AP, and transferred to another school.  Afterwards, Pena, the school district's outgoing superintendant, sent Bray a memorandum giving her notice that her position as an AP with the School would be "discontinued" starting January 11, 2010.  That same day, Pepein asked Bray to vacate the School building because it would be closed for the

weekend.   A building safety agent escorted Bray and her male companion from the building.   On January 27, Bray received a letter from Elaine Gorman ("Gorman"), superintendent of Manhattan High Schools, indicating that her position had been formally discontinued effective that day.

Bray was reassigned to Bayard Rustin Educational Campus ("Bayard"), a high school in Manhattan, as an absent teacher reserve.   As a result of her reassignment, Bray suffered a loss of compensation of $32,000 in annual salary.   According to Bray, the reassignment also affected the length of time necessary for her to qualify for tenure.   As Bray explains, if not for the reassignment she would have qualified for tenure as of August 2013, but will now only qualify in August 2016.   Bray worked at Bayard until October 2010, when she was transferred to Columbia Secondary School, where she continued to be employed as an absent teacher reserve.   Bray is currently employed by the DOE as an Assistant Principal for Administration at the College Academy high school in Manhattan.

December 2009 Filing with NYCCHR

On December 14, Bray filed a complaint with the New York City Commission on Human Rights ("NYCCHR"), claiming sexual harassment and retaliation in violation of NYCHRL, N.Y.C. Admin. Code § 8-107.   The complaint alleges that Jimenez

9

"propositioned" Bray for sex shortly after she began working at the School, that Jimenez told Bray that he "wanted to be with her" in May 2009, and that in July 2009, Jimenez "leaned in" to smell Bray.

On March 4, 2010, Bray served a second notice of claim on the DOE.  The notice described the nature of plaintiff's claims as (1) retaliation in violation of § 704(a) of the Civil Rights Act of 1964, New York State Executive Law § 296(1)(e), and NYCHRL, N.Y.C. Admin. Code § 8-108(7); (2) negligent and intentional infliction of emotional distress, (3) defamation, and (3) other causes of action.  The notice alleged that, in retaliation for her filing of the September 3 complaint with the OEO, her probation as an AP had been discontinued.

June 2010 Filing with EEOC

Sometime around June 2010, the plaintiff appears to have also filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  The EEOC assigned the number 520-2010-02446 to the charge.  On June 16, the DOE received a Notice of Charge from the EEOC indicating that Bray had filed a charge of discrimination alleging a violation of Title VII of the Civil Rights Act.  The Notice of Charge indicates that Bray identified both sex discrimination and retaliation as bases for her complaint.

10

On August 10, Bray filed a second verified complaint with the NYCCHR, amending her earlier complaint ("Second NYCCHR Complaint"). The Second NYCCHR Complaint added the allegation that, on December 11, 2009, Bray had been demoted from Assistant Principal to teacher in retaliation for filing a complaint with the OEO. Unlike the First NYCCHR Complaint, the Second NYCCHR Complaint specifically alleges that the DOE "violated Title VII of the Civil Rights Act of 1964." It also "authorize[d] the [NYCCHR] to accept this verified complaint on behalf of the [EEOC]."

Approximately a month later, on September 3, 2010, the EEOC issued a Right to Sue letter to Bray ("First Letter" or "Letter"). The Letter indicates that the EEOC closed its file on the charge because "based upon its investigation" it was "unable to conclude that information obtained establishes violations of the statutes."

2010: Bray Files Federal Lawsuit

Bray withdrew her NYCCHR complaints on July 19, 2011. Approximately a month later, on August 17, 2011, the EEOC issued a second Right to Sue Letter ("Second Letter"). The Second Letter indicates that the EEOC closed its file on the charge because the "charging party wishe[d] to pursue matter in Federal District court."

Plaintiff filed her complaint in this court on November 4, 2011.  The complaint asserts claims for sex discrimination and retaliation in violation of Title VII, as well as parallel violations of NYSHRL and NYCHRL.  Following the close of discovery, the defendant filed a motion for summary judgment with respect to all of the plaintiff's claims.  This motion was fully submitted on April 5.

DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings.  Fed.R.Civ.P. 56(c); Hicks v.

12

Baines, 593 F.3d 159, 166 (2d Cir. 2010).  Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Baines, 593 F.3d 159 at 166.

At the outset, it is worth noting that the defendant claims that it is entitled to summary judgment on the merits of Bray's hostile work environment and retaliation claims and because its exercise of reasonable care absolves it of vicarious liability for its employee's creation of a hostile work environment.  The defendant is not entitled to summary judgment on these grounds. The plaintiff has presented evidence from which a jury could conclude that she was subject to harassing behavior that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  The record evidence, taken in the light most favorable to the plaintiff, suggests that Jimenez repeatedly harassed the plaintiff over a period of months.  Among the instances in which Jimenez is alleged to have acted inappropriately is a serious instance of sexual assault.

The defendant is also not entitled to summary judgment by virtue of the Faragher/Ellerth defense.  In Faragher v. City of

13

Boca Raton and Burlington Indus., Inc. v. Ellerth, the Supreme
Court held that

> An employer is subject to vicarious liability to a
> victimized employee for an actionable hostile
> environment created by a supervisor with immediate or
> successively higher authority over the employee.  When
> no tangible employment action is taken, a defendant
> employer may raise an affirmative defense to liability
> or damages, subject to proof by a preponderance of the
> evidence.  The defense comprises two necessary
> elements: (a) that the employer exercised reasonable
> care to prevent and correct promptly any sexually
> harassing behavior; and (b) that the plaintiff
> employee unreasonably failed to take advantage of any
> preventive or corrective opportunities provided by the
> employer or to avoid harm otherwise. . . . No
> affirmative defense is available, however, when the
> supervisor's harassment culminates in a tangible
> employment action, such as discharge, demotion, or
> undesirable reassignment.

Faragher, 524 U.S. 775, 807 (1998); Ellerth, 524 U.S. 742, 745
(1998).  It is undisputed that Jimenez occupied a supervisory
role over Bray.  In addition, Jimenez was responsible for
recommending the removal of Bray from her AP position at the
school, resulting in her reassignment to another school and
effective demotion to the position of teacher.[2]  Because of this
tangible employment action, the Faragher/Ellerth defense is not
available in this case.

---

[2] The parties do not address whether Jimenez's reassignment of
Bray from AP of Operations to AP of Physical Education -- a
position for which she purportedly not qualified -- may have
also constituted a tangible employment action.

Even if the Faragher/Ellerth defense were available in this case, the defendant has not offered sufficient evidence to secure summary judgment on this ground.  The defendant offers no evidence of the DOE's anti-harassment policy and complaint procedures -- a decidedly "important consideration in determining whether the employer has satisfied the first prong of this defense."  Leopold v. Baccart, Inc., 239 F.3d 243, 245 (2d Cir. 2001).

Furthermore, the defendant does not, and cannot, contend that the plaintiff "completely failed to avail herself of" the DOE's complaint procedure.  Id. at 246.  Instead, defendant's argument relies largely on a characterization of plaintiff's complaints about Jimenez's harassment as untimely.  But, taken in the light most favorable to the plaintiff, the record suggests that Jimenez's harassment was ongoing at the time Bray began complaining of his harassment and that Bray took advantage of corrective opportunities offered by DOE.  Under the circumstances, the defendant would be vicariously liable for Jimenez's creation of a hostile work environment.[3]

---

[3] The defendant appears to be arguing that it is entitled to raise the Faragher/Ellerth defense because the discontinuance of plaintiff's employment was not "part of the alleged sexual harassment."  It is true that the Faragher/Ellerth defense is available when "any tangible employment action taken against the

15

Finally, Bray has submitted sufficient evidence to avoid summary judgment on her retaliation claim.  It is undisputed that the plaintiff engaged in protected activity when she reported Jimenez's sexual harassment to the OEO.  Jimenez admits that he received notice of Bray's OEO complaint on September 4, 2009.  A month later, on October 5, Jimenez placed a letter in Bray's file claiming that Bray had disrupted an administrative meeting on September 24 in Jimenez's office.  He placed a second letter in Bray's file on December 1, indicating that Bray had failed to provide updated balance sheets for School accounts, to secure School funds, and to monitor health compliance mandates for students' tuberculosis vaccinations.[4]  Around December 10, Jimenez also refused to permit Bray to participate in a supervisory support program which she believed would help her

---

employee was not part of the supervisor's discriminatory harassment" but that is so only where it is evident that any tangible employment actions "were independent of [the supervisor's] discriminatory harassment."  Ferraro v. Kellwood Co., 440 F.3d 96, 101-02 (2d Cir. 2006).  That is not the case here.

[4] Bray claims that although School protocol requires that an employee sign a disciplinary letter before it is placed in the employee's file, she never received or signed the December 1 letter.  The letter is indeed unsigned.  It includes a notation by a secretary indicating that the secretary delivered it to Bray on December 11.

avoid receiving an unsatisfactory rating.[5]  Finally, on December
11, Jimenez recommended that Bray's "Probationary Service" as an
AP be "discontinued."  This sequence of arguably retaliatory
conduct, beginning only a month after Jimenez was notified of
Bray's complaint, and culminating in the removal of Bray from
her position as AP only a month later is sufficient to satisfy
plaintiff's burden of demonstrating a causal link between her
protected activity and the retaliation.  See Gorzynski v.
JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).

Moreover, as a result of Jimenez's recommendation, Bray was
removed from her AP position, and transferred to another school
where she reverted to the position of teacher.  She suffered a
loss of compensation and a set-back with respect to her ability
to earn tenure.  In addition, before Jimenez learned of the
plaintiff's complaint he gave her a satisfactory rating despite
the fact that Bray had allegedly failed to deposit School funds
in a bank promptly.  A jury could infer from this evidence that
Jimenez's subsequent disapproval of Bray's performance was

---

[5] Jimenez also allegedly took less formal actions in retaliation
for Bray's complaints about his behavior.  For instance, she
claims that Jimenez did not invite her to "cabinet" meetings.
In particular, she recalls that in November or December Jimenez
did not invite her to a sexual harassment professional
development meeting that took place in his office.

pretextual and that the actions were instead taken in retaliation for Bray's sexual harassment complaint.  Cifra v. G.E. Co., 252 F.3d 205, 217 (2d Cir. 2001).  This evidence is sufficient to raise a genuine issue of material fact with respect to whether Bray's removal from her AP position was an act of retaliation in violation of Title VII.  Because the defendant is not entitled to summary judgment on any of these grounds, the only remaining issues pertain to the timeliness of Bray's claims.  This Opinion proceeds to consider those issues.

I. Timeliness of Title VII Claim

The DOE asserts that Bray's Title VII claim must be dismissed since she did not file this lawsuit within 90 days of receiving a Right to Sue letter dated September 3, 2010.  This lawsuit was filed more than a year later, on November 4, 2011.

In order to bring suit under Title VII in New York State, a complainant must exhaust her administrative remedies by filing a complaint with the EEOC within 300 days of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e); Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993).  Upon receiving the Right to Sue letter, the plaintiff has 90 days in which to file suit.  42 U.S.C. § 2000e-5(e).  The 300 and 90-day time limits are akin to statute of limitations. Accordingly, they are subject to equitable tolling, waiver, and

18

estoppel in appropriate circumstances.  See Zipes v. Trans.
World Airlines, Inc., 455 U.S. 385, 393 (1982); Johnson v. Al
Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984).
In addition, a plaintiff's failure to comply with the time
limitations is an affirmative defense for which a defendant
bears the burden of proof.  Laouini v. CLM Freight Lines, Inc.,
586 F.3d 473, 475 (2d Cir. 2009); Johnson, 731 F.2d at 146.

A plaintiff is presumed to have received a Right to Sue
letter three days after its mailing.  Sherlock v. Montefiore
Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).  In addition, when a
government agency mails a notice, there is a presumption that it
was mailed on the date shown on the document.  Id. at 526.
These presumptions may be rebutted, however, if the plaintiff
shows when she actually received the letter.  Id.

On December 10, 2009, the plaintiff filed a complaint with
the NYCCHR ("First NYCCHR Complaint").  The complaint did not
reference Title VII or authorize the complaint to be filed with
the EEOC, making it unlikely that the plaintiff's First NYCCHR
Complaint constituted a filing with the EEOC.  See 29 C.F.R.
1601.13(b)(1); cf. Ford v. Bernard Fineson Dev. Ctr, 81 F.3d
304, 308 (2d Cir. 1996).

On June 14, 2010, the EEOC issued a "Notice of Charge of
Discrimination" to the DOE.  While the record does not contain a

19

copy of Bray's complaint to the EEOC,[6] the EEOC Notice to DOE
lists the EEOC Charge Number as 520-2010-02446.  It identifies
"Felicia Bray" as the complainant, and indicates she has charged
the DOE with employment discrimination under "Title VII of the
Civil Rights Act."  The Notice further specifies that Bray
alleged both sex discrimination and retaliation as the bases for
her complaint.  The record also contains the First Right to Sue
Letter mailed to the plaintiff at her correct address on
September 3, 2010.  It also lists the EEOC Charge Number as 520-
2010-02466.  When asked about this letter during her deposition,
the plaintiff recalled receiving it from the EEOC, but was not
sure when she received it.[7]

     There is no genuine dispute that the plaintiff filed a
charge with the EEOC sometime before June 14, 2010, alleging
both sex discrimination and retaliation in violation of Title
VII.  At her deposition the plaintiff testified both that she

---

[6] As a result of a major flood on June 24, 2012, the EEOC's New
York Office was partially destroyed, resulting in the loss of
over 100,000 closed case files, including the investigative file
associated with Charge Number 520-2010-02466.  The defendants
also requested that the plaintiff produce the complaint, but the
plaintiff failed to do so.

[7] Plaintiff was also shown the Second Right to Sue Letter.  Upon
consideration of both, she was sure she had received at least
one of them.

20

"probably did" file a complaint with the EEOC and that she

"didn't even know anything about" agencies like the EEOC.  These

statements by the plaintiff are insufficient to raise a genuine

issue of fact regarding her act of filing a complaint with the

EEOC.[8]  In her declaration in opposition to the motion for

summary judgment, moreover, the plaintiff does not deny filing a

charge with the EEOC.  It is undisputed that the First Right to

Sue Letter was mailed to the plaintiff on September 3, 2010.  In

the absence of evidence to the contrary, she is presumed to have

received it on September 6, 2010.  Accordingly, her time to file

suit expired on Monday, December 6, 2010.

The EEOC's Second Letter has no impact on the 90-day filing

limitation because there is no evidence to suggest that the

Second Letter encompassed discriminatory conduct that was not

captured by the First Right to Sue Letter.[9]  See Soso Liang Lo v.

---

[8] The plaintiff has submitted no sworn denial of the charge's
existence.  Instead, the only denial of the charge's existence
appears in the plaintiff's 56.1 statement.  Statements made in a
Local Rule 56.1 statement do not constitute evidence and cannot
"substitute for an affidavit as to the facts."  Holtz v.
Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001).  When
an assertion found in a 56.1 statement fails to cite to
admissible evidence, a court is "free to disregard the
assertion."  Id.

[9] The Second Letter was prompted by Bray's August 2010 amendment
of her NYCCHR Complaint to add a claim that DOE had also
violated Title VII.  Under the "dual filing" protocol in New

<u>Pan Am. World Airways, Inc.</u>, 787 F.2d 827, 828 (2d Cir. 1986). In such cases, the Second Right to Sue Letter is without effect. <u>Id.</u>; <u>cf.</u> <u>McPherson v. New York City Dept. of Educ.</u>, 457 F.3d 211, 214 (2d Cir. 2006); <u>Mahroom v. Defense Lang. Inst.</u>, 732 F.2d 1439, 1440 (9th Cir. 1984).  Because the plaintiff did not file suit until November 4, 2011, her Title VII claim is untimely.

The plaintiff makes no argument that she is entitled to equitable tolling of the 90-day filing limit, but instead makes four other arguments.  First, the plaintiff argues that because the defendant did not submit either the complaint associated with the First Letter or the defendant's answer to the complaint, the defendant's argument that the plaintiff's Title VII claim is untimely must fail.  The defendant submitted the EEOC Notice of Charge and the First Letter.  Both of these documents are sufficiently probative of whether the plaintiff filed a charge with the EEOC and satisfy the defendant's burden.

In a second and related argument, the plaintiff speculates that the conduct of which she complained in her EEOC complaint

_____

York State, a filing with the NYCCHR is deemed filed with the EEOC.  <u>See</u> <u>Joseph v. Manhattan and Bronx Surface Transit Operating Auth.</u>, No. 96 Civ. 9015 (DAB), 2004 WL 1907750, *2 n.3 (S.D.N.Y. Aug. 25, 2004); <u>see also</u> <u>Ford</u>, 81 F.3d at 306-08 (describing work-sharing agreement between EEOC and NYSDHR).

may have been "completely different" from the circumstances involved in the present case.  The plaintiff may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks, 593 F.3d at 166.  This unsupported hypothetical is contrary to the only admissible evidence that has been submitted.  In addition, it is worth noting that, at no point has the plaintiff suggested that around the same time that the events described above were occurring, she was also being subjected to completely unrelated discriminatory conduct that could have formed the basis for the June 2010 EEOC charge.  Her amendment to her NYCCHR complaint in August 2010 -- two months after the June 2010 complaint to the EEOC -- to add a Title VII claim is strong evidence that the only conduct of which she has ever complained to an anti-discrimination agency is the course of conduct that forms the basis for this federal lawsuit.

Third, the plaintiff argues that defendant has not established that the First Letter was delivered to the plaintiff and her attorney, and therefore has not satisfied its burden of proof on this affirmative defense.  This argument fails on a number of grounds.  First, during her deposition the plaintiff acknowledged, albeit uncertainly, that she had received the letter.  Also, the plaintiff's declaration in opposition to the

defendant's motion for summary judgment does not contain a denial that she received the First Letter.  Second, as explained above, there is a presumption that a Right to Sue Letter is received by a plaintiff three days after its mailing.  Third, there is no requirement that an EEOC Right to Sue Letter be received by the plaintiff's attorney as long as it is received by the plaintiff herself.  Cf. Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 38 (2d Cir. 2011).

Finally, the plaintiff claims that the defendant waived this defense because its answer to the complaint did not raise the plaintiff's failure to file suit within 90 days of the receipt of the First Letter as an affirmative defense.  The answer listed the plaintiff's failure to comply with applicable statutes of limitations as a defense.  The plaintiff was also questioned about when she had received the First and Second Letters during her deposition.  Thus, the plaintiff received sufficient notice of this defense and the defense was not waived.

II. Supplemental Jurisdiction over NYSHRL and NYCHRL Claims

The plaintiff also alleges parallel violations of NYSHRL, N.Y. Exec. Law § 296, and NYCHRL, N.Y.C. Admin. Code § 8-107. As there is no longer any federal claim in this action, it is within the Court's discretion whether to exercise supplemental

jurisdiction over plaintiff's remaining state and municipal law claims.  Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262-63 (2d Cir.2006).  For the reasoning discussed below, the Court declines to exercise supplemental jurisdiction over the remaining state and municipal law claims.

   The parties dispute whether a one or three-year statute of limitations applies to these claims, and whether the statute of limitations was tolled during the pendency of plaintiff's complaint with the NYCCHR.  Ordinarily, New York law imposes a three-year statute of limitations on actions alleging employment discrimination.  See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code. 8-502(d); see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997).  When such a suit is filed against the DOE, however, New York's Education Law § 3813 specifies that a shorter one-year statute of limitations will govern "notwithstanding any other provision of law providing a longer period of time in which to commence an action."  N.Y. Educ. Law § 3813; see also Amorosi v. South Colonie Indep. Central School Dist., 9 N.Y.3d 367, 373 (2007); Springs v. Board of Educ., No. 10 Civ. 1243 (RJH), 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 4, 2010).  Accordingly, the plaintiff's NYSHRL and NYCHRL claims are governed by a one-year statute of limitations.

25

The defendant argues that the one year statute of limitations requires dismissal of the remaining claims since the plaintiff did not file this lawsuit until twenty-three months after her discharge as an AP.  The plaintiff argues, however, that the statute of limitations was tolled while her claims were pending before the NYCCHR.  Specifically, she argues that the statute of limitations on her NYSHRL and NYCHRL claims was tolled pursuant to N.Y.C. Admin. Code § 8-502(d) while the plaintiff's claims were pending with NYCCHR.  These claims were pending from December 14, 2009 to July 19, 2011.  The defendant claims, on the other hand, that because the plaintiff voluntarily withdrew her complaint from the NYCCHR on July 19, 2011, N.Y. Exec. Law § 297(9) prevents the statute of limitations from being tolled.  To address this dispute, it is useful to consider the language of the dueling city and state provisions.

Section 8-502(d) of New York City's Administrative Code provides that

> A civil action commenced under this section must be commenced within three years after the alleged unlawful discriminatory practice or act of discriminatory harassment or violence as set forth in chapter six of this title occurred.  Upon the filing of a complaint with the city commission on human rights or the state division of human rights and during the pendency of such complaint and any court proceeding for review of the dismissal of such

26

complaint, <u>such</u> three year <u>limitations period shall be tolled</u>.

N.Y. Admin. Code § 8-502(d) (emphasis supplied.)

Section 297(9) of New York's Executive Law provides, in

part, that

Any person claiming to be aggrieved by an unlawful
discriminatory practice shall have a cause of action
in any court of appropriate jurisdiction for damages,
. . . <u>unless such person had filed a complaint
hereunder or with any local commission on human
rights,</u> . . . provided that, where the division has
dismissed such complaint on the grounds of
administrative convenience, on the grounds of
untimeliness, or on the grounds that the election of
remedies is annulled, such person shall maintain all
rights to bring suit as if no complaint had been filed
with the division.  At any time prior to a hearing
before a hearing examiner, a person who has a
<u>complaint pending at the division may request that the
division dismiss the complaint and annul his or her
election of remedies</u> so that the human rights law
claim may be pursued in court, <u>and the division may,
upon such request, dismiss the complaint on the
grounds that such person's election of an
administrative remedy is annulled.</u>  Notwithstanding
subdivision (a) of section two hundred four of the
civil practice law and rules, <u>if a complaint is so
annulled by the division, upon the request of the
party bringing such complaint before the division,
such party's rights to bring such cause of action
before a court of appropriate jurisdiction shall be
limited by the statute of limitations in effect in
such court at the time the complaint was initially
filed with the division.</u>

N.Y. Exec. Law § 297(9) (emphasis supplied).

As Section 297(9) demonstrates, a complainant ordinarily

must choose between an administrative remedy and a judicial one.

27

Under the so called "election of remedies" doctrine, a complainant who files a complaint with either the NYSDHR or NYCCHR cannot subsequently sue in court on the same claims. See N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 1-805(a); see also York v. Assoc. of Bar of City of N.Y., 286 F.3d 122, 126-127 (2d Cir. 2002).  Section 297(9) makes exceptions to this rule, however, when the NYSDHR dismisses a complaint filed with it on the basis of administrative convenience, untimeliness, or a complainant's annulment of her election of remedies.

When a complaint is dismissed because a plaintiff has requested that the division dismiss the complaint, this annuls her election of remedies.  But, Section 297(9) makes clear that the otherwise applicable statute of limitations is not tolled when such an annulment occurs.  Specifically, a dismissal for annulment of election of remedies occurs when, "prior to a hearing before a hearing examiner, a person who has a complaint pending at the division . . . request[s] that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court." N.Y. Exec. Law § 297(9) (emphasis supplied).  Within Section 297(9), the "term 'division' means the state division on human rights created by this article," unless "a different meaning clearly appears from the context."  N.Y. Exec. Law § 292(7).  In

28

other words, it refers to the NYSDHR, not the NYCCHR.  Thus, on its face, Section 297's instruction that a statute of limitation is not tolled by the filing of a complaint that is subsequently dismissed at the request of a complainant prior to a hearing, applies only when the NYSDHR dismisses a complaint filed with the NYSDHR on such a ground.  In the present case, in contrast, the complaint was filed and withdrawn from the NYCCHR.

The parallel municipal provisions are similar but not identical to New York's Executive Law.  New York City's Administrative Code, like New York's Executive Law, bars a complainant from filing suit in court after filing a complaint with the NYCCHR or NYSDHR:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or by an act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate, unless such person has filed a complaint with the city commission on human rights or the state division on human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.

N.Y.C. Admin. Code § 8-502(a) (emphasis supplied).

The Administrative Code also creates exceptions to the election of remedies bar, by providing that

> Notwithstanding  . . . [the election of remedies bar
> created by] subdivision a of this section, where a
> complaint filed with the city commission on human
> rights or the state division on human rights <u>is</u>
> <u>dismissed by the city commission on human rights</u>
> <u>pursuant to subdivisions a, b, or c of section 8-113</u>
> <u>of the chapter one of this title</u>, or by the state
> division of human rights pursuant to subdivision nine
> of section two hundred ninety-seven of the executive
> law either for administrative convenience or on the
> grounds that such person's election of an
> administrative remedy is annulled, an aggrieved person
> shall maintain all rights to commence a civil action
> pursuant to this chapter as if no such complaint had
> been filed.

N.Y.C. Admin. Code § 8-502(c) (emphasis supplied).  As this

provision demonstrates, only when the NYCCHR dismisses a

complaint pursuant to Section 8-113(a), (b), or (c) is the

election of remedies bar lifted.  Subdivision (a) permits the

commission to dismiss a complaint "for administrative

convenience at any time prior to taking of testimony at a

hearing," while subdivision (b) requires the commission to

dismiss the complaint for administrative convenience under

certain other circumstances, and subdivision (c) requires the

NYCCHR to dismiss the complaint if the commission lacks

jurisdiction.  N.Y.C. Admin. Code § 8-113(a), (b), (c).

A different section of the Administrative Code, Section 8-

112 allows a complainant as of right, or with the NYCCHR's

permission, to withdraw her complaint.  N.Y.C. Admin. Code § 8-

112.  Section 8-502(c)'s finite list of exceptions to the

election of remedies bar would seem to indicate that a
withdrawal pursuant to Section 8-112 -- a Section not mentioned
in 8-502(c) -- does not annul the complainant's election of
remedies.  On the other hand, some types of withdrawals plainly
do annul the complainant's election of remedies, thereby
permitting the complainant to proceed to court.  In particular,
Section 8-502(c)'s first listed exception to the election of
remedies bar -- Section 8-113(a) -- includes some requests for
withdrawal.  Section 8-113(a) provides that "administrative
convenience shall include, but not be limited to" circumstances
where "the complainant requests such dismissal, one hundred
eighty days have elapsed since the filing of the complaint with
the commission and the commission finds (a) that the complaint
has not been actively investigated, and (b) that the respondent
will not be unduly prejudiced thereby."  N.Y.C. Admin. Code § 8-
113(a).

The precise basis for the termination of plaintiff's NYCCHR
complaint is not clear.  An email from a NYCCHR Attorney to
Bray's attorney indicates that "[a]s requested, the Commission
with [sic] withdraw the Complaint," suggesting that the
plaintiff's complaint may have been withdrawn pursuant to
Section 8-112 or dismissed pursuant to Section 8-113(a).  The
actual notice of withdrawal, however, is not in the record,

leaving some question as to how the NYCCHR understood the withdrawal to operate.

In any event, if the dismissal of Bray's NYCCHR complaint is not barred by the election of remedies doctrine, it is not clear that the pendency of the complaint before the NYCCHR tolled the one-year statute of limitations.  The N.Y.C. Administrative Code does not appear to include a provision equivalent to that in Section 297(9) of New York's Executive Law, which requires any complainant who has voluntarily withdrawn her complaint from the NYSDHR to file her lawsuit within the statute of limitations period without the benefit of tolling.  Because the parties have not addressed the intricacies of these statutory construction issues, and because they require the application of municipal law, this Court declines to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims.

CONCLUSION

The defendants' January 30 motion for summary judgment is granted with respect to the plaintiff's Title VII claim.  The Court declines to exercise supplemental jurisdiction over the plaintiff's state and municipal law claims.  The Clerk of Court shall close the case.

Dated:   New York, New York
         July 10, 2013


_____
                DENISE COTE
         United States District Judge